UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Fox Northstar,

       Plaintiff,

       v.                                 Civil Action No. 2:13-CV-12

Commissioner of Social Security,

       Defendant.

**OPINION AND ORDER**
(Docs. 8, 11)

      Plaintiff Fox Northstar brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner

of Social Security ("Commissioner") denying his application for disability insurance

benefits.  Pending before the Court are Northstar's motion to reverse the Commissioner's

decision (Doc. 8), and the Commissioner's motion to affirm the same (Doc. 11).  For the

reasons stated below, the Court DENIES Northstar's motion and GRANTS the

Commissioner's motion to affirm.

**Background**

      Northstar was fifty-five years old on his alleged disability onset date of

December 16, 2009.  He has a bachelor's degree in history, and has earned credit towards

obtaining a master's degree in education.  (AR 31, 292.)  He was in the United States

Navy for approximately four years, and has work experience as a line cook, a

pressman/printer, a railroad worker, and a post-office clerk.  (AR 32, 34.)  He is divorced, and has two children and two grandchildren.  (AR 292.)  He lives with his sister.  (AR 46.)

Starting in March 2008, Northstar has had multiple "spells" or blackouts.  (AR 33, 207, 293, 296.)  His medical providers and examining consultants have been unable to determine their cause.  (AR 293, 296.)  In September 2008, Northstar injured his ankle in a motorcycle accident.  (AR 33.)  He nonetheless continued working at his post-office job, which required him to be on his feet for six to eight hours each day, until October 2009, when he accepted a "buy[]out" for health reasons.  (AR 33–34, 166, 292.)  On a typical day during the alleged disability period, Northstar cooked, shopped, cut wood, read the paper, did beadwork (which he later hoped to sell at Native American gatherings), wrote op-ed articles for an online magazine, and researched his genealogy on the computer.  (AR 42, 44, 45, 292.)  He also volunteered to give library tours twice a week, and occasionally attended Native American gatherings on the weekend.  (AR 47, 292.)  At these gatherings, Northstar danced for "[m]aybe 10 minutes tops" and then sat down to do beadwork.  (AR 48.)  Due to his ankle problems, Northstar has been unable to do activities—such as hiking, biking, or bowling—which would require him to be on his feet or use his legs for an extended period.  (AR 50; *see also* AR 56.)

In September 2009, Northstar filed an application for social security disability insurance benefits, alleging that, starting on September 1, 2009[1], he has been unable to

---

[1]  The alleged disability onset date was later changed to December 16, 2009.  (AR 29.)

work due to memory loss caused by seizures; open sores on his hands; foot, leg, and hip pain related to a broken ankle; and difficulty standing for more than two hours at a time. (AR 152.) Northstar's application was denied initially and upon reconsideration, and he timely requested an administrative hearing. The hearing was conducted on July 20, 2011 by Administrative Law Judge ("ALJ") Robert Klingebiel. (AR 24–60.) Northstar appeared and testified, and was represented by an attorney. Northstar's sister, Serena Noble, also testified at the hearing.

On July 29, 2011, the ALJ issued a decision finding that Northstar was not disabled under the Social Security Act from his alleged disability onset date of September 1, 2009 through his date last insured of December 31, 2010. (AR 10–16.) Thereafter, the Appeals Council denied Northstar's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–3.) Having exhausted his administrative remedies, Northstar filed the Complaint in this action on January 17, 2013. (Doc. 3.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to

3

whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Klingebiel first determined that Northstar had not engaged in substantial gainful activity since his alleged disability onset date through the date last insured.  (AR 12.)  At step two, the ALJ found that, although Northstar had the medically determinable impairments of "status post ankle injury and a

possible seizure disorder," these impairments were not "severe." (*Id.*) Without proceeding through the remaining steps of the sequential process, the ALJ concluded that Northstar had not been under a disability during the alleged disability period. (AR 16.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the

determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Northstar argues that substantial evidence does not support the ALJ's step-two finding that he had no severe impairment(s) affecting his ability to work. (Doc. 8 at 8.) Specifically, Northstar asserts that the ALJ erred in his analysis of the medical opinions of agency consultants Drs. Leslie Abramson and Geoffrey Knisely, and in his credibility determination. The Commissioner disagrees, and claims that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards. For the reasons stated below, I find in favor of the Commissioner.

## I. The ALJ Properly Assessed the Medical Opinions of the Agency Consultants.

In support of his finding that Northstar did not have a severe impairment, the ALJ gave "greatest weight" to the opinions of the state agency medical consultants, including Drs. Abramson and Knisely. (AR 16.) In a February 2010 report, Dr. Abramson summarized the relevant medical records, including a January 2010 consultation report prepared by neurologist Dr. Andres Roomet, and concluded that Northstar had "[n]o medically determinable impairment." (AR 297.) A few months later, after also considering Dr. Roomet's report, Dr. Knisely opined that Northstar may have a seizure

disorder but the impairment was "not severe." (AR 313.)  The ALJ gave great weight to these opinions because he found them to be "consistent with the record as a whole." (AR 16.)

Northstar asserts that the ALJ should not have given so much weight to the opinions of Drs. Abramson and Knisely for two reasons: first, these providers did not consider Northstar's ankle impairment; and second, they did not have all the relevant medical evidence available to them when they prepared their reports. (Doc. 8 at 12–14.) It does not appear, however, that these providers neglected to consider Northstar's ankle impairment.  As noted above, both doctors referred to Dr. Roomet's January 2010 report wherein Dr. Roomet recorded that, although Northstar "state[d] that he ha[d] a bad ankle," his "station and gait [were] normal." (AR 288.)  Moreover, Dr. Abramson specifically noted Dr. Roomet's observation that Northstar's gait was "normal," and concluded that "[n]o physical [medically determinable impairment was] established." (AR 297; *see* AR 288.)

Furthermore, the ALJ reviewed medical evidence submitted after Drs. Abramson and Knisely completed their reports, including December 2010 X-rays of Northstar's ankle, which revealed "unremarkable" results. (AR 15 (citing AR 347).)  The ALJ also noted that a December 2009 MRI "revealed no evidence of acute fracture, but showed potential for a tendon tear." (AR 15 (citing AR 321).)  Indeed, the MRI report states: "No significant abnormality." (AR 314.)  These medical records do not indicate the severity of Northstar's ankle impairment, and do not suggest that the impairment functionally limited Northstar.

Nor does the additional evidence cited by Northstar—much of which was submitted after Drs. Abramson and Knisely completed their reports—demonstrate that Northstar's ankle impairment functionally limited him during the alleged disability period. For example, Northstar cites a treatment note from Taconic Orthopaedics which states that his ankle "was placed in an air cast stirrup brace," but that note is dated September 10, 2008, over a year before the alleged disability onset date. (AR 317; *see* Doc. 8 at 13.) Even assuming this treatment note is relevant to the alleged disability period, it states that, although Northstar had mild to moderate swelling in his ankle, he had full range of motion and no instability. (AR 317.) The note does not recommend surgery or medication, but rather, merely suggests that Northstar start "progressive weight-bearing on the left lower extremity with the air cast on" and "range of motion strengthening" to the knee and ankle, refrain from working for two weeks, and return for reevaluation in four weeks. (*Id.*) Although a November 2009 treatment note from Taconic Orthopaedics documents an "[a]ntalgic gait pattern" and limited range of motion due to ankle pain (AR 319), and 2010 treatment notes from the Veteran's Administration medical providers record Northstar's complaints of chronic left ankle pain and use of an ankle brace (AR 332–38); other treatment notes state that Northstar exhibited normal motor power, station, and gait (AR 341), and was "significantly" helped by the ankle brace (AR 351). Additionally, as discussed above, testing of Northstar's ankle revealed essentially normal results. (AR 347.) Where, as here, there is potentially conflicting medical evidence, it is for the fact-finder to resolve, and the court may not substitute its judgment for that of the Commissioner. *Colling v. Barnhart*, 254 F. App'x 87, 88 (2d

Cir. 2007) (quoting *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002)); *see also Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (although courts may not accept "an unreasoned rejection of all the medical evidence in a claimant's favor," the Commissioner need not "reconcile explicitly every conflicting shred of medical testimony"). In any event, as stated above, none of these medical records shed light on the severity of Northstar's ankle impairment. Moreover, as pointed out by the Commissioner (Doc. 11-1 at 5), the record contains no medical opinion stating that Northstar's ankle impairment significantly limited Northstar's ability to do basic work activities.

Accordingly, I find that substantial evidence supports the ALJ's finding that the opinions of Drs. Abramson and Knisely are consistent with the record, and Northstar's claim that the ALJ should not have afforded great weight to these opinions fails.

## II. The ALJ Did Not Err in His Credibility Determination.

Next, Northstar questions the ALJ's determination that, although Northstar's medically determinable impairments could reasonably have been expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms are "not credible to the extent they are inconsistent with finding that [Northstar] had no severe impairment or combination of impairments." (AR 15.) It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). Thus, if the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a

claimant's subjective complaints.  *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)).  "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."  SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

Here, the ALJ gave two specific reasons in support of his credibility determination.  First, the ALJ stated that Northstar's complaints were unsupported by the objective medical evidence.  As discussed above, substantial evidence supports this statement, as the objective medical evidence does not demonstrate that Northstar's ankle impairment was severe.  The ALJ's reliance on this evidence was proper, as the regulations provide that, in determining the intensity and persistence of a claimant's symptoms, the ALJ must consider "all of the available evidence," including "signs and laboratory findings, and statements from . . . your treating or nontreating source . . . about how your symptoms affect you."  20 C.F.R. § 404.1529(c)(1).

Second, the ALJ properly considered Northstar's extensive daily activities in determining whether his statements concerning the intensity, persistence, and limiting effects of his symptoms were credible.  Specifically, throughout the decision, the ALJ accurately noted that Northstar's activities included swimming, cutting wood to heat his cabin, volunteering to give library tours, cooking, driving, running errands, doing beadwork, occasionally attending and dancing at Native American gatherings, writing a column in an online magazine, working on the computer, and managing his finances.  (AR 14–15, 25, 42–50, 292.)  It was proper for the ALJ to consider Northstar's ability to

engage in these activities in assessing the credibility of his complaints of ankle pain.  *See Calabrese v. Astrue*, 358 F. App'x 274, 278 (2d Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(3)) ("in assessing the credibility of a claimant's statements, an ALJ must consider . . . the claimant's daily activities").  It was also proper for the ALJ to consider that Northstar continued to work for approximately one year after his September 2008 ankle injury, even though his job required him to be on his feet for six to eight hours each day.  (AR 14, 34, 166, 211.)

Northstar faults the ALJ for stating that "[Northstar] has alleged that his impairments prevent him from sustaining work *in any capacity*."  (AR 15 (emphasis added); *see* Doc. 8 at 10.)  The argument fails.  Although it would have been more accurate for the ALJ to have stated that Northstar has alleged his impairments limit his ability to work such that he is eligible for disability benefits, the statement did not affect the ALJ's decision in any meaningful way.

I therefore find that the ALJ did not err in determining that Northstar was not entirely credible.  *See Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) ("We have no reason to second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling.").

## Conclusion

For these reasons, the Court DENIES Northstar's motion (Doc. 8), GRANTS the Commissioner's motion (Doc. 11), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 17th day of October, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge